IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| ERNEST GIARDINO, <br><br> Plaintiff, <br><br> vs. <br><br> TOWN OF CHAPIN, SOUTH CAROLINA, <br><br> Defendant. | Civil Action No: 3:25-cv-07321-MGL <br><br> **VERIFIED COMPLAINT** |

Comes now Plaintiff Ernest Giardino and avers the following:

## INTRODUCTION

1. This is a civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Ernest Giardino ("Giardino") against Defendant Town of Chapin, South Carolina ("Town" or "Chapin") challenging the constitutionality of Chapin Ordinance § 14.1001, *et seq.*, "Parades. Demonstrating. Picketing." (also "Ordinance") on its face and as applied to Giardino's religious exercise and speech.

2. Chapin interprets and applies the Ordinance regulating "demonstrations" to engulf Giardino's use of religious signs while standing on public rights-of-way in town limits, requiring him to (i) apply for a permit to hold a sign on a public way, (ii) supply fourteen-day advance notice of his use of a sign, (iii) divulge identity and content of his sign, (iv) conditioned on standardless approval of the Mayor, and, if approved, (v) limit his time holding a sign to thirty minutes, and (vi) to move to a different spot after fifteen minutes.

3. Chapin's application of the Ordinance to Giardino has deprived and will continue to deprive him of the exercise of his fundamental freedoms and guarantees.

4. Giardino seeks nominal damages vindicating the violation of his constitutional rights in the past and injunctive and declaratory relief to avoid further violation of his constitutional rights in the future.

5. This action is premised on the First and Fourteenth Amendments to the United States Constitution and South Carolina's Religious Freedom Act.

6. Each and every act of Chapin specified herein was committed by Chapin under the color of state law and authority.

## JURISDICTION AND VENUE

7. This cause of action raises federal questions under the United States Constitution and 42 U.S.C. § 1983.

8. The Court has jurisdiction over Giardino's claims for nominal damages and injunctive relief under 28 U.S.C. § 1343. This Court has jurisdiction over Giardino's request for declaratory relief under 28 U.S.C. §§ 2201 and 2202. The Court has supplement jurisdiction over the state claim under 28 U.S.C. § 1367. And the Court has jurisdiction over Giardino's claims for costs and attorney fees under 42 U.S.C. § 1988.

9. The District of South Carolina is the proper venue for this action per 28 U.S.C. § 1391(b). The Defendant resides in this district and the claims arise in this district.

## PLAINTIFF

10. Plaintiff Giardino is and was at all relevant times a resident of Chapin, South Carolina.

## DEFENDANT

11. Defendant Chapin is a municipal governmental authority and a subdivision of the

State of South Carolina, having the capacity to enact and enforce laws and ordinances regulating activities occurring on Chapin's streets, sidewalks, and public rights-of-way.

## STATEMENT OF FACTS

*Giardino Wants to Share his Religious Beliefs through Signs on Public Ways in Chapin*

12. Giardino is an evangelical Christian driven by his faith to share the good news of Jesus Christ (gospel) with others.

13. He wants to inform others of the salvation they can find by believing in Jesus Christ and accepting Him as their savior.

14. To convey this evangelistic message, Giardino holds a 20-inch by 24-inch sign attached to a short handle containing a short, pithy statement about the gospel while standing on a public sidewalk or public right-of-way in the town limits of Chapin, South Carolina.

15. Giardino displays an assortment of statements with his signs. None of the statements are designed to be inflammatory or offensive, they are purely evangelistic in nature, conveying messages like "Trust Christ He paid the price," "He saved others – Jesus – He'll save you," "Give your burdens to Jesus," "He did this [referring to Jesus dying on the cross] for you," "Don't give up! There is hope in Jesus," "Seek ye the Lord while he may be found," "Say it and mean it…God be merciful to me a sinner…," "Christ Jesus came to save sinners," "Sin – Face it now or face Him later," and "Death is Not the End, Ye Must Be Born Again."

16. Giardino cycles through the various signs, some of which have statements on both sides of the sign, and all relate to the gospel message.

17. Giardino spontaneously chooses the location he uses to hold a sign, going where he believes God is leading him that day or at that moment. He wants to display his signs in public

3

spaces where he can expect a meaningful stream of vehicular traffic and Chapin offers him several good options for this purpose.

18.     Giardino considers signs a unique and irreplaceable method for communicating his gospel message, facilitating a far greater impact than he would have otherwise. Through signs, Giardino can convey his message without causing anyone to stop or speak with him. Individuals in vehicles can read the statements on his sign as they drive by him.

19.     Giardino typically holds a sign in a public space for over one hour and in the late afternoon during rush hour and/or after schools have let students out, to maximize the number of people who can view the messaging on his sign.

20.     He does not use amplification or project his message orally to share his religious beliefs. He remains silent when he holds a sign, only speaking with individuals who approach him for conversation.

21.     Giardino does not engage in any form of protest or demonstration with his signs. He does not object to anyone or anything with his signs, nor does he convey any political views with his signs.

22.     When holding one of his gospel-oriented signs in public, Giardino consciously avoids blocking pathways or disrupting traffic.

23.     He also ensures that his expressive activities do not impede any businesses by avoiding areas where people traverse to enter or exit a business.

### *Initially, Giardino Was Free to Use Religious Signs in Chapin*

24.     Giardino began his sign evangelism in October of 2023, holding signs on public ways in Chapin at least once a week, usually on Thursdays.

25. Giardino conducted this expressive activity for about eight months without interference or questioning from police officers or other Chapin officials. He had every reason to believe his signs were legal.

***Chapin Requires Giardino to Obtain a Permit to Hold Religious Signs in Public Spaces***

26. But on June 20, 2024, Giardino learned he needed a permit from Chapin to hold a religious sign on public sidewalks and rights-of-way in town.

27. On this Thursday, Giardino stood on a public right-of-way near the corner of Chapin Road and Lexington Avenue, and held a sign stating, "Trust Christ He paid the price" on one side of the sign and "He saved others – Jesus – He'll save you" on the other side.

28. He held this sign at the corner for over an hour and was about to leave when a Chapin police officer halted Giardino's speech, advising him that he needed a permit from the Town to display his religious message on public property. Giardino acknowledged the warning and soon left the area.

29. He was surprised by the directive for a permit and concerned about the implications.

30. The permit requirement seemed misplaced to Giardino. Chapin lets others display non-religious signs on public ways and particularly at intersections corners in Town by attaching the signs to poles or placing them in the ground. Giardino did not understand why he needed to secure a permit to display his religious signs in public.

31. Troubled by the permit requirement, the next day, June 21, 2024, Giardino visited Chapin Town Hall to determine whether the Town would make him get a permit to hold a religious sign on public ways. He hoped the police officer was mistaken.

32. Giardino met with the Chief of Police, Thomas W. Griffin ("Griffin"), and the Code Enforcement Officer at the time, John Patton ("Patton"), and asked them whether he needed a permit to hold a religious sign in public places.

33. They confirmed the requirement, informing Giardino that his religious speech falls within the purview of Ordinance § 14.1001, *et seq.*, entitled "Parades. Demonstrating. Picketing."

34. Giardino did not understand how the ordinance could apply to his expressive activity, since he was not participating in a parade or demonstrating or picketing, and objected to the requirement. But Griffin and Patton were steadfast about the permit, reiterating to Giardino that he had to have a permit to hold a sign in public.

35. Enforcing the permitting process, they handed Giardino an application entitled "PUBLIC DEMONSTRATION PERMIT APPLICATION, CHAPTER 14 – ARTICLE X. PARADES. DEMONSTRATION. PICKETING," which included the full text of the Ordinance.

36. The Ordinance reads:

> 14.1001. - PERMIT REQUIRED. MARCHES, PICKETING, DEMONSTRATIONS.
> a. It shall be unlawful to demonstrate, picket, or march unless a permit to perform such actions has been secured. To secure a permit, those desiring same shall make application, duly signed by the individual organizer or by an officer of the organization, and submit it unto the Municipal Clerk. An application for a permit will be reviewed for subsequent approval by the Mayor, or Mayor Pro Tern if the Mayor is unavailable, with notice to Council. Applications must be submitted at least fourteen (14) days before the time of such demonstration, picket, or march. The application shall state the time, duration, purpose, the number of persons or vehicles to be engaged, the area in which said demonstration, picketing, or marching will occur and the individual, group of individuals or organization directing and responsible for said demonstration, picketing, or marching.
> b. When picketing or engaging in "demonstrations," no person shall:
>    1. Use on the streets or public places any verbal abuse, including curses, insults or threats, or acts of violence, directed against any person.

6

2. March, parade, protest or picket in any manner other than as permitted by this article, except with the express written consent and approval of the Mayor and Council.

3. Engage in riotous and loud conduct which invades the privacy of homes or businesses.

4. Damage or destroy or injure the person or property of others.

5. Block, in any manner, the streets and means of ingress and egress to places of business.

6. Interfere with, in any manner, or obstruct any official in the performance of his duties.

7. Interfere in any matter with the attendance, during school hours, of children in the public schools, by inciting or urging them to participate in demonstrations or for any other unlawful purpose or reason, or permitting them to be or remain in churches or other places used in such demonstrations.

8. Picket other than in accordance with the following principles:

    (a) In small numbers.

    (b) In a manner so as not to interfere with pedestrians or vehicular traffic.

    (c) In a manner so as not to block entrances or exits to or from picketed establishments.

    (d) No more than four (4) pickets posted at any one (1) time at any one (1) business establishment.

    (e) No more than two (2) business establishments picketed in the same block at the same time.

    (f) No picket trespassing upon the property of the business establishment being picketed.

    (g) Pickets patrolling on the sidewalk at a distance of not less than eight (8) feet from every other picket.

    (h) No person or persons, whether in sympathy with the pickets or not, shall assemble, loiter, congregate or engage in any kind of picketing of the establishment being picketed except those picketing in their official capacity.

9. "Demonstrate," other than in accordance with the following principles:

    (a) Walking not more than two (2) abreast upon the public sidewalks or in groups of not more than thirty (30) persons.

    (b) Observe all traffic control devices.

      (c) Walking close to the building line or curb so as not to interfere with or obstruct other pedestrian traffic on the sidewalk.

      (d) Assemble peacefully and speak peacefully for a period of time not exceeding thirty (30) minutes and when traffic to and from places of business or employment is not at its peak, and in such circumstances as will not unduly disrupt the public peace, and conducted in such a manner as not to deprive the public of adequate police and fire protection.

   c. This section shall not apply to funeral processions, the United States Armed Forces, the military forces of this state or the Police and Fire Departments of the Town.

  14.1002. – SAME. ISSUANCE.

      Upon receipt of an application for a permit for a parade, procession or gathering, the Mayor and Council shall, in its discretion, issue a permit therefor, subject to considerations of the public convenience and public welfare.

  14.1003. – IMPOSITION OF RESTRICTIONS.

   a. The Mayor and Council shall have the authority to impose such restrictions, conditions and safeguards upon the conduct of a parade, procession or public gathering as it shall deem fit or proper.

   b. Cults, masked faces or organizations practicing discrimination against anyone shall not be permitted to assemble or parade in the Town of Chapin.

37.    Reading it, Giardino noted and was troubled by the burdens associated with the permit requirement. He saw approval was not automatic but could be denied by the Mayor at his discretion. He also learned that he would have to give advance notice of his intentions to hold a sign fourteen days before doing it, eliminating spontaneity of his speech. He further saw that he was limited to thirty minutes of sign use, severely limiting his expressive activity.

38.    On top of these requirements, at this same meeting, Patton advised Giardino that he had to move to a different sidewalk every fifteen minutes to comply with the permit.

8

### *Giardino Encounters Significant Difficulties with the Permit Requirement*

39.     Giardino continued to doubt the propriety of the permit requirement, but he decided to try to comply with the permit scheme and fill out applications for sign use because he was unwilling to give up his sign ministry.

40.     The permit application requires the following information: name of a contact individual, name of the business or organization, contact information, event name or purpose, date of demonstration, beginning and end time of demonstration, location of demonstration, and type of activity during demonstration. Giardino was uneasy about providing this personal information, believing it was invasive, onerous, and unnecessary.

41.     Giardino stated his "Event name/Purpose" was "Holding up signs about Jesus Christ" and his "Type of Activity During Demonstration" was "Holding signs." As contemplated by the Ordinance, the permit applications confirmed the Mayor retains the option to either approve or deny the request. Giardino was concerned the Mayor could deny his religious sign use for any or no reason.

42.     Chapin officials forced Giardino to adhere to the 14-day advance notice requirement in turning the permit applications in, and he obliged.

43.     Giardino specified two separate locations to hold a sign in the applications due to the rule that required him to move every fifteen minutes. He also divulged in the permit applications his desire and intention to hold a sign for one hour and fifteen minutes, specifying 4:00 pm to 5:15 pm. But the Mayor, in granting the permits, reminded Giardino: "Time is Limited to 30 Minutes."

44. Despite obtaining approvals from the Mayor, Giardino subsequently discovered police officers could stop his speech anyway. In August of 2024, two Chapin police officers confronted Giardino while he was holding a sign on the public right-of-way close to the intersection of Chapin Road and Lexington Avenue, and demanded he produce a copy of his permit.

45. Giardino did not have a copy of the permit on him. He was unaware of a need to carry a permit, as no such obligation was indicated in the Ordinance or permit application. Nevertheless, the police officers insisted Giardino keep a copy of the permit on him anytime he went out with a sign.

46. On another occasion, Giardino was reminded of the need to spontaneously alter the duration of his sign-holding. While standing at the corner of Chapin Road and Lexington Avenue with a sign, he believed God was compelling him to walk across the intersection to the corner in front of Sonic Drive-In and hold his sign there for an extended time. Giardino did not believe the permit covered the additional time, but he made the move anyway because he felt God was prompting him to do it.

47. And Giardino subsequently learned that his relocation decision was providential. A young man came up to Giardino and told him that he decided to not go through with suicide because he saw his sign about the gospel. Giardino believes the man might not have ever seen his sign had he adhered to the specifications in the permit.

48. Additionally, Giardino encountered several situations when he was not able to display his sign on the date selected for the permit due to inclement weather or some unanticipated conflict on the scheduled date.

### *Giardino Seeks Relief from Chapin Without Litigation*

49.     Due to these mounting concerns over the permitting process, in the summer and fall of 2024, Giardino began to consider whether he could do anything about the permit requirement for his signage.  He continued to believe Chapin was wrongly applying the permit requirement to his speech.

50.     Hoping to resolve the dilemma without resorting to litigation, on October 24, 2024, Giardino, through legal counsel, sent correspondence to Mayor Al Koon and Police Chief Griffin of Chapin requesting relief from the permit requirement on his signs.

51.     The letter set out Giardino's concerns and the constitutional flaws with the permit ordinance on its face and as applied to Giardino's sign use, explaining how the enforcement against the religious signs violates his constitutional rights.

52.     Desiring timely relief from the permit requirement, the letter asked Town officials to provide written assurance to Giardino's counsel by November 12, 2024, assuring that Chapin would no longer apply the permit scheme to Giardino's signs.  Giardino did not seek damages in the correspondence, just relief from the Ordinance.

### *Chapin Confirms Intentions to Apply the Ordinance to Giardino's Signs*

53.     Chapin officials did not respond to the request by November 12, 2024, or any other date.  Instead, Chapin provided a public statement about the issue through Chapin Town Administrator Nicholle Burroughs.

54.     In this public statement, Ms. Burroughs confirmed that "[i]n accordance with town policy, a public demonstration permit is required whenever signage [is used]."

55.     The public statement attempted to defend the restriction on signs as needed to "prevent unnecessary loitering that impact businesses[,]" concluding that '[s]ignage, when left unchecked, can lead to visual clutter, detracting from the aesthetic appeal of our town, obscuring important public information, and potentially causing safety concerns."

56.     Giardino hoped for a more direct response to his plea for relief, but none from Chapin was forthcoming.  In a continuing effort to explore an amicable resolution, on December 4, 2024, Giardino, again though counsel, sent a second letter to Chapin, this time to Ms. Burroughs as well as Mayor Koon and Chief Griffin.

57.     This second letter reminded Town officials of the need for a response to the previous letter and asked if Ms. Burrough's public statement about the Ordinance served as the response.  Further, the letter informed that Giardino could only assume Chapin would persist with its unconstitutional permit requirement unless Town officials advised otherwise within a couple of weeks.

58.     Chapin neglected to respond to Giardino's concerns within two weeks and has yet to respond.

59.     Giardino found the lack of response from Chapin officials concerning, but he was resolved to continue with his sign ministry in the Town.

60.     Giardino went to public spots in Chapin once a week just about every week and without obtaining a permit.  He could no longer cope with the permitting process.

61.     Chapin did not interfere with Giardino's signs for several months.  Giardino hoped the Town decided to leave him alone, but Chapin stopped him again on March 27, 2025.

62. This day, in latter part of the afternoon, Giardino went to the public right-of-way on the southeast corner of Chapin Road and Amicks Ferry Road. He was looking forward to displaying his sign.

63. This corner, like other public places in Chapin, had existing signs from other groups or individuals there.

64. Subsequently, Planning & Zoning Manager Reid Radtke approached Giardino about his sign.

65. Radtke asked Giardino why he was not getting a permit for holding a sign, emphasizing, "We got a complaint" about the sign.

66. Giardino asked Radtke why Chapin never responded to his letters about the permit requirement, to which, Radtke replied: "We don't have to answer the letter."

67. Giardino tried to explain to Radtke that the Town could not constitutionally make him get a permit to hold a sign in public.

68. Nonplussed, Radtke reiterated that Chapin would make Giardino obtain a permit, explaining, "Our permit supersedes the Constitution because it's a local ordinance."

69. Giardino was unsure how to address this logic and Radtke advised he would not argue the point any further anyway. They transitioned into cordial conversation until Radtke eventually left the scene.

70. Following this exchange, Giardino concluded that he was in peril of receiving criminal penalty for holding a sign in Chapin without a permit.

71. For fear of sanction, Giardino has not gone out into the public ways of Chapin with a sign since the encounter with Radtke on March 27, 2025.

### *Chapin Continues to Stymie Giardino's Religious Exercise and Speech*

72. Giardino wants to hold his signs on the public ways of Chapin to exercise his religious beliefs and spread his gospel message to Town's residents and visitors. His desire to evangelize has not waned.

73. But the Ordinance is an insurmountable barrier to Giardino's evangelism. It persists in burdening his religious exercise and expression on public ways.

74. The Ordinance requires Giardino to obtain a permit, provide fourteen-day advance notice, and supply identity and content of speech, for holding a religious sign in public.

75. The Ordinance vests the Mayor of Chapin with the power to deny his request to hold a sign with no criteria or deadlines for making this decision.

76. The Ordinance further limits his sign use to thirty minutes.

77. Chapin has also warned Giardino that, while unwritten, the Ordinance forbids any expressive or religious content from remaining in a single location any longer than fifteen minutes.

78. The onerous requirements Chapin imposes on Giardino's religious speech deters him from engaging in his constitutionally protected expression on public ways. And Giardino fears Chapin will charge him with a misdemeanor for failing to obtain a permit as set forth in § 14.1104 of the Chapin Code, which could result in either a penalty of up to $500.00 or imprisonment for up to thirty days pursuant to § 14.1105 of the Chapin Code.

79. The adverse impact of chilling and deterring Giardino from exercising his constitutional rights on public ways constitutes irreparable harm to him.

80. Giardino has no adequate remedy at law for the loss of his constitutional rights.

# FIRST CAUSE OF ACTION

## *Violation of Free Speech Clause*

81. Giardino's religious expression constitutes protected speech under the First Amendment to U.S. Constitution.

82. Chapin Ordinance § 14.1001, *et seq*., and Chapin's application of it:

    a. enforces overly broad restrictions on protected speech;

    b. singles out a select type of speech for discriminatory restriction;

    c. chills the free speech and religious expression of individual or small group speakers;

    d. restricts speech on the basis of content;

    e. stifles the spontaneity of expression;

    f. allows for an invalid heckler's veto; and

    g. lacks narrow tailoring, fails to achieve any legitimate government purpose, and does not leave open alternative avenues for expression.

83. Defendant Chapin cannot justify a permit requirement for individual or small group sign expression in traditional public fora, requiring personal information and advance notice.

84. Defendant Chapin cannot justify giving the Mayor unfettered discretion to approve, deny, or ignore applications for free speech permits.

85. Defendants Chapin cannot justify the outright prohibition on expression occurring in traditional public fora located in the same area for longer than fifteen minutes or for a total period of time greater than thirty minutes.

86.     The Ordinance and Defendant Chapin's application thereof violate the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment.

WHEREFORE, Giardino respectfully prays the Court grant the equitable and legal relief set forth in his prayer for relief.

## SECOND CAUSE OF ACTION

*Violation of Free Exercise Clause*

87.     Chapin's enforcement of § 14.1001, *et seq.*, has violated and continues to violate Giardino's constitutional right to freely exercise his religion as set out in the First Amendment to U.S. Constitution.

88.     Chapin Ordinance § 14.001, *et seq.*, and Chapin's application of it:

   a. provides Chapin with the unilateral authority and discretion to approve, deny, or ignore Giardino's requests to exercise his religious faith;

   b. discriminates against religion in categorizing religious expression as a picket or demonstration while not viewing similar secular speech in the same way;

   c. chills the free exercise of the religious activity of evangelism;

   d. prevents individuals and small groups from spontaneously speaking and moving as directed by religious beliefs; and

   e. fails to achieve any compelling government purpose.

89.     The Ordinance and Defendant Chapin's application thereof violate the Free Exercise Clause of the First Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment.

WHEREFORE, Giardino respectfully prays the Court grant the equitable and legal relief set forth in his prayer for relief.

### THIRD CAUSE OF ACTION

*Violation of South Carolina's Religious Freedom Act*

90. By statute, South Carolina prohibits all its political subdivisions from substantially burdening a person's exercise of religion, even if the burden results from a rule of general applicability, unless the government entity can demonstrate that the burden is: (1) in furtherance of a compelling state interest; and (2) the least restrictive means of furthering that compelling state interest. S.C. Code Ann. § 1-32-40 (1999), Religious Freedom Act.

91. Chapin Ordinance § 14.1001, *et seq*., and Chapin's application of it burdens sincere religious practice of evangelism.

92. Defendant Chapin has no compelling interests that justify the burden it imposes on the religious practice of evangelism.

93. The Ordinance and Defendant Chapin's application thereof violate South Carolina's Religious Freedom Act.

WHEREFORE, Giardino respectfully prays the Court grant the equitable and legal relief set forth in his prayer for relief.

### FOURTH CAUSE OF ACTION

*Violation of Due Process Clause*

94. Chapin Ordinance contains vague language and lacks objective standards to guide police officers and other Chapin officials with the enforcement of it.

95.     The vague language allows Town officials to enforce the Ordinance in an *ad hoc*, arbitrary, and discriminatory manner.

96.     Defendant Chapin cannot justify the unduly vague language of the ordinance.

97.     The Ordinance is void for vagueness and violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Giardino respectfully prays the Court grant the equitable and legal relief set forth hereinafter in his prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Giardino respectfully prays for relief in that this Court:

A.     Assume jurisdiction over this action;

B.     Enter a judgment and decree declaring Chapin Ordinance §14.1001, *et seq.*, is unconstitutional on its face and as applied to Giardino's religious exercise and speech on public ways, violating Giardino's rights and those of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

C.     Enter a preliminary and permanent injunction enjoining Defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying Chapin Ordinance §14.1001, *et seq.*, to individual or small group religious exercise and speech on public sidewalks and ways in Chapin;

D.     Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

E.     That this Court award Giardino nominal damages in the amount of $1.00 arising

out of the violation of his constitutional rights;

  F. That this Court award Giardino his costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

  G. That this Court grant such other and further relief as appears to this Court to be equitable and just.

                Respectfully submitted,

                <u>/s/ Henry P. Wall</u>
                Henry P. Wall, Fed. ID # 4891
                Bruner, Powell, Wall & Mullins, LLC
                1735 St. Julian Place, Suite 200
                Columbia, SC 29204
                Telephone: (803) 252-7693
                Email: hwall@brunerpowell.com
                *Attorney for Plaintiff Ernest Giardino*

                Nathan W. Kellum*
                MS BAR # 8813; TN BAR #13482
                First Liberty Institute
                699 Oakleaf Office Lane, Suite 107
                Memphis, TN  38117
                Telephone: (901) 684-5485
                Email: nkellum@firstliberty.org
                **Not Admitted: Application for admission Pro hac vice is forthcoming*

                William G. Bell*
                TX BAR # 24132656
                First Liberty Institute
                2001 W. Plano Parkway, Suite 1600
                Plano, Texas 75075
                Telephone: (469) 440-7581
                Email: gbell@firstliberty.org
                **Not Admitted: Application for admission Pro hac vice is forthcoming*

July 15, 2025